Slip Op. 08-26

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Pat Huval Restaurant & Oyster Bar, Inc., Jim Fruge d/b/a Fisherman's Cove, Catfish Wholesale, Inc., Frank Melancon d/b/a French's Enterprises Seafood Peeling Plant, Aqua Farms Crawfish, Inc., Andre Leger d/b/a Chez Francois, Charles Bernard d/b/a Charles' Crawfish Pad, and J. Bernard Seafood Processing, Inc., <br><br>     Plaintiffs, <br><br>          v. <br><br> United States of America, United States International Trade Commission, Daniel R. Pearson (Chairman, United States International Trade Commission), United States Customs & Border Protection, and W. Ralph Basham (Commissioner, United States Customs & Border Protection), <br><br>     Defendants. | **Before:  Gregory W. Carman, Judge** <br>        **Timothy C. Stanceu, Judge** <br>        **Leo M. Gordon, Judge** <br><br> Consol. Court No. 06-00290 |

Soileau Law Office (Jacques P. Soileau and Walter Glenn Soileau) for Plaintiffs: Pat Huval Restaurant & Oyster Bar, Inc.; Jim Fruge d/b/a Fisherman's Cove; Catfish Wholesale, Inc; Frank Melancon d/b/a French's Enterprises Seafood Peeling Plant; Aqua Farms Crawfish, Inc.; Andre Leger d/b/a Chez Francois; Charles Bernard d/b/a Charles' Crawfish Pad; and J. Bernard Seafood Processing, Inc.

Arent Fox Kintner Plotkin & Kahn, PLLC (John M. Gurley and Nancy A. Noonan) for Plaintiff, Koyo Corporation of U.S.A.

Steptoe & Johnson, LLP (Herbert C. Shelley, Alice A. Kipel, and Susan R. Gihring) for Plaintiff, SKF USA Inc.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David S.

Silverbrand and Todd M. Hughes) for Defendants, United States Customs & Border Protection and W. Ralph Basham.

James M. Lyons, General Counsel, Neal J. Reynolds, Assistant General Counsel, Office of the General Counsel (Patrick V. Gallagher, Jr., Karen V. Driscoll, and Andrea C. Casson) for Defendants, United States International Trade Commission and Daniel R. Pearson.

Stewart and Stewart (Geert M. DePrest, Terence P. Stewart, and Amy S. Dwyer) for Defendants-Intervenor, MPB Corporation and Timken US Corporation.

March 3, 2008

### Opinion & Order

**Per Curiam:** Plaintiffs[1] assert various claims, including constitutional claims, arising out of the Continued Dumping and Subsidies Offset Act of 2000 ("CDSOA"), commonly known as the "Byrd Amendment." Defendants, United States International Trade Commission and Daniel R. Pearson (collectively, the "ITC") and United States Customs and Border Protection and W. Ralph Basham (collectively, "Customs"), and Defendants-Intervenor, MPB Corporation and Timken US Corporation (collectively, "Timken"),[2] move pursuant to USCIT Rs. 12(b)(1) and 12(b)(5) to dismiss Plaintiffs' claims on various grounds. For the reasons that follow, the Court

---

[1]The plaintiffs to this action are a group of eight Louisiana crawfish producers: Pat Huval Restaurant & Oyster Bar ("Pat Huval"); Jim Fruge d/b/a Fisherman's Cove; Catfish Wholesale, Inc; Frank Melancon d/b/a French's Enterprises Seafood Peeling Plant; Aqua Farms Crawfish, Inc.; Andre Leger d/b/a Chez Francois; Charles Bernard d/b/a Charles' Crawfish Pad; and J. Bernard Seafood Processing, Inc. (collectively, the "Crawfish Producers"), and two domestic bearings producers, SKF USA Inc. ("SKF") and Koyo Corporation of USA ("Koyo").

[2]MPB and Timken intervened in Koyo Corp. of U.S.A. v. United States, Ct. No. 06-324, and SKF USA Inc. v. United States, Ct. No. 06-328, which have been consolidated with the captioned matter. (Order dated Feb. 23, 2006, Ct. Doc. 91.)

grants in part, and denies in part, the USCIT R. 12(b)(1) motions of the ITC and Timken, and

denies the USCIT R. 12(b)(5) motions of Customs, the ITC, and Timken.


### STATUTORY BACKGROUND

In 2000, Congress enacted the Byrd Amendment.  See Agriculture, Rural Development,

Food and Drug Administration, and Related Agencies Appropriations Act of 2001, Pub. L. No.

106-387, §§ 1001-03, 19 U.S.C. § 1675c (2000) (repealed 2006).  Under the Byrd Amendment,

Customs distributes on an annual basis antidumping and countervailing duties collected from

foreign producers to certain members of the competing domestic industry as reimbursement for

specified qualifying expenditures.  Under the "support requirement" of the Byrd Amendment,

eligibility for Byrd distributions is limited to "affected domestic producer[s]" ("ADPs"), who are

defined as petitioners or those who supported a petition that led to an antidumping or

countervailing duty order.  Id. at § 1675c(b)(1).

The Byrd Amendment is implemented as follows: for every antidumping or

countervailing duty order in effect, the ITC must compile and forward to Customs a list of parties

who satisfy the support requirement ("ADP list").  Id. at § 1675c(d)(1); cf. Cathedral Candle Co.

v. U. S. Int'l Trade Comm'n, 400 F.3d 1352, 1367 (Fed. Cir. 2005) (affirming the ITC's decision

not to include on ADP lists those parties that had indicated support for the petition under pledge

of confidentiality).  Customs annually publishes the ADP lists in the Federal Register, along with

a notice of intent to distribute antidumping and countervailing duties that were collected in that

fiscal year.  19 U.S.C. § 1675c(d)(2).  In the notice of intent to distribute, Customs informs ADPs

of a requirement to submit within 60 days certifications indicating that the party is eligible—and

desires—to receive a Byrd distribution, and "enumerat[ing] the qualifying expenditures" for

which the ADP is seeking reimbursement.  19 C.F.R. § 159.63(a) (2007).  After reviewing the

certifications, Customs distributes the funds on a pro rata basis to eligible ADPs.  Customs is to

make these distributions "not later than 60 days after the first day of [the following] fiscal year."

19 U.S.C. § 1675c(c).

## FACTUAL BACKGROUND

All Plaintiffs are domestic producers of a product for which an antidumping duty order is

in place.[3]  Because the antidumping duty orders on the relevant products, crawfish tail meat and

bearings, predate passage of the Byrd Amendment, the ITC was required to forward to Customs

the ADP lists for those orders within 60 days after passage of the statute, see 19 U.S.C.

§ 1675c(d)(1), which the ITC did on December 29, 2000.  (Koplan Letter to Customs at 1, ITC

Admin. R. for Pat Huval, Doc. 1.)  Plaintiffs were excluded from the ADP lists because they did

not satisfy the support requirement, i.e., they were neither petitioners in the respective

antidumping investigations nor parties who publicly expressed support for the petitions.

---

[3]The Crawfish Producers process crawfish tail meat.  Commerce entered an antidumping duty order on crawfish tail meat from China on September 15, 1997.  Freshwater Crawfish Tail Meat From the People's Republic of China, 62 Fed. Reg. 48,218 (Dep't Commerce Sept. 15, 1997) (notice of amendment to final determination of sales at less than fair value and antidumping duty order).  SKF and Koyo both manufacture bearings.  Antidumping duty orders are in place on bearings from multiple countries.  See, e.g., Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany, 54 Fed. Reg. 20,900 (Dep't Commerce May 15, 1989) (antidumping duty order); Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan, 54 Fed. Reg. 20,904 (Dep't Commerce May 15, 1989) (same); Tapered Roller Bearings and Certain Components, From Japan, 41 Fed. Reg. 34,974 (Dep't Commerce Aug. 18, 1976) (same).

Customs published the ADP lists for the first time on August 3, 2001, in the notice of

intent to distribute funds collected for fiscal year 2001. <u>Distribution of Continued Dumping and</u>

<u>Subsidy Offset to Affected Domestic Producers</u>, 66 Fed. Reg. 40,782, 40,788, 40,796 (U.S.

Customs Service Aug. 3, 2001) ("<u>2001 Notice of Intent to Distribute</u>").  Subsequently, Customs

received certifications from, and distributed the fiscal year 2001 funds to, certain members of the

domestic crawfish tail meat and bearings industries who were eligible ADPs.  Customs has

repeated this process every year since 2001.[4]

Most of the Plaintiffs, at points between 2001 and 2006, requested that the ITC add them

to the ADP lists for their respective antidumping duty orders.[5]  In addition, several Plaintiffs filed

---

[4]The Byrd Amendment was repealed on February 8, 2006, subsequent to a ruling in a
dispute settlement proceeding conducted by the World Trade Organization.  Appellate Body
Report, <u>United States–Continued Dumping and Subsidies Offset Act of 2000</u>, WT/DS217/AB/R,
WT/DS234/AB/R (Jan. 16, 2003).  However, the repeal did not affect distribution of duties paid
on goods that entered the United States before October 1, 2007, Deficit Reduction Act of 2005,
Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006), and the last Byrd distribution was made
in 2007.

[5]Pat Huval filed a written request with the ITC to be placed on the ADP list for the
antidumping order on crawfish tail meat from China on August 24, 2002.  (ITC's Admin. R. for
Pat Huval, Doc. 15.)  Pat Huval filed a second request on January 6, 2006 (<u>id.</u> at Doc. 23), and a
third request on March 17, 2006 (<u>id.</u> at Doc. 26).  Of the remaining Crawfish Producers, Catfish
Wholesale on August 21, 2002 (<u>id.</u> at Doc. 8), and Aqua Farms on August 27, 2002 (<u>id.</u> at
Doc. 12), filed requests with the ITC to be placed on the relevant ADP list.  Another Crawfish
Producer, French's Enterprise, made inquiries through its congressional representative as to why
the company was not included on the ADP list.  (<u>Id.</u> at Docs. 18, 19, 21.)  The remaining
Crawfish Producers did not file written requests to be added to the ADP list, although two of
them, Charles Bernard of Charles' Crawfish Pad and J. Bernard Seafood Processing, Inc.,
claimed that they made oral requests to the ITC and Customs for fiscal year 2002 distributions.
(Br. in Supp. of Pls.' Mot. for Summ. J. 8 (Jan. 13, 2007) (withdrawn Feb. 23, 2007).)
     SKF filed a written request with the ITC to be placed on the ADP list for all the bearings
orders on September 22, 2006.  (ITC's Admin. R. for SKF, Doc. 14.)  Koyo filed a similar
request on August 11, 2006. (ITC's Admin. R. for Koyo, Doc. 11.)

certifications with Customs in attempts to receive distributions for various years.[6]  The ITC

denied Plaintiffs' requests to be added to the ADP lists.[7]  Customs, in turn, excluded Plaintiffs

from Byrd distributions.  Subsequent to these denials, the Crawfish Producers, SKF, and Koyo

each filed suit in this Court challenging the constitutionality and application of the Byrd

Amendment's support requirement.[8]

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i)(2) and (4)

(2000) in that Plaintiffs' claims arise out of a law providing for administration and enforcement

of the antidumping statute, which is a law "providing for . . . tariffs, duties, fees, or other taxes on

the importation of merchandise for reasons other than the raising of revenue."  Id. at § 1581(i)(2).

---

[6]Pat Huval timely filed a certification for fiscal year 2002 on August 24, 2002.  (Customs' Admin. R. for Pat Huval, Doc. 9.)  SKF filed a certification with Customs for fiscal year 2004 on September 28, 2006.  (Customs' Admin. R. for SKF, Doc. 5.)  Koyo timely filed a certification with Customs for fiscal year 2006 on July 31, 2006.  (Customs' Admin. R. for Koyo, Docs. 2, 4.)

[7]As of the date of filing of SKF's and Koyo's complaints, the ITC had not yet responded to SKF's and Koyo's requests to be added to the ADP lists.  However, in the case of each request by Plaintiffs to which the ITC has responded, the ITC has denied the request on the grounds that Plaintiffs were neither petitioners nor supporters of the underlying petition.  (See ITC's Admin. R. for Pat Huval, Docs. 10, 11, 15.)

[8]Pat Huval initially filed suit in federal district court for the Western District of Louisiana. The district court transferred Pat Huval's suit to this Court on August 22, 2006.  (Order dated Aug. 22, 2006, Ct. Doc. 46.)  Subsequent to the transfer, Pat Huval filed a motion to amend its complaint and name seven additional crawfish producers as parties-plaintiff, which was granted by the Court.  (Order dated Nov. 7, 2007, Ct. Doc. 71.)

STANDARD OF REVIEW

In deciding a USCIT R. 12(b)(1) motion that does not challenge the factual basis for the complainant's allegations, and when deciding a USCIT R. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, the Court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-84 & n.13 (Fed. Cir. 1993); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (subject matter jurisdiction); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (failure to state a claim). Dismissal for failure to state a claim upon which relief can be granted is proper if the plaintiff's factual allegations are not "enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. __, __, 127 S. Ct. 1955, 1965 (2007) (citations omitted).

DISCUSSION

Two recent decisions of this Court holding the Byrd Amendment's support requirement unconstitutional provide the background to this action. See SKF USA Inc. v. United States, 30 CIT __, __, 451 F. Supp. 2d 1355, 1366 (2006), appeal docketed, No. 2008-1008 (Fed. Cir. Oct. 3, 2007), ("SKF I") (holding the support requirement of the Byrd Amendment unconstitutional on equal protection grounds); PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n, 30 CIT __, __, 442 F. Supp. 2d 1329, 1358-59 (2006) (holding the support requirement unconstitutional on First Amendment grounds). As in SKF I and PS Chez Sidney, the restrictions governing who qualifies as an ADP are at the center of this action. Plaintiffs allege

that limiting ADP status to those who satisfy the support requirement is unlawful on various grounds.

First, all Plaintiffs claim that the Byrd Amendment violates First Amendment guarantees of free speech and the right to petition the government for redress of grievances because it conditions Byrd distributions on the expression of a specific viewpoint, thereby constituting viewpoint discrimination and resulting in compelled speech. (Pls.' Second Supp'l & Amended Compl. ("Crawfish Producers' Compl.") ¶¶ 38-39; SKF's Compl. ¶¶ 44-46; Koyo's Compl. ¶¶ 53-56.) Second, all Plaintiffs claim that the Byrd Amendment violates the Equal Protection Clause of the Fifth and Fourteenth Amendments because it impairs Plaintiffs' right to fair treatment in the exercise of a constitutionally protected right and because it discriminates between similarly situated domestic producers based on a classification that is not rationally related to a legitimate government objective. (Crawfish Producers' Compl. ¶¶ 35-37; SKF's Compl. ¶¶ 47-50; Koyo's Compl. ¶¶ 61-68.) Third, all Plaintiffs claim that implementation of the Byrd Amendment violates due process guarantees of the Fifth and Fourteenth Amendments. The Crawfish Producers maintain that their due process rights were violated because they were denied a vested property interest in funds to which they claim to be fully entitled, without notice and a meaningful opportunity to be heard, and because the Byrd Amendment was impermissibly applied retroactively. (Crawfish Producers' Compl. ¶¶ 27-30.) Plaintiffs SKF and Koyo claim that the application of the Byrd Amendment was impermissibly retroactive because it was not rationally related to a legitimate government purpose. (SKF's Compl. ¶¶ 51-53; Koyo's Compl. ¶¶ 69-71.)

Additionally, the Crawfish Producers contend that the Byrd Amendment is an unconstitutional bill of attainder because it retroactively penalizes certain domestic producers for actions taken prior to enactment of the statute.  (Crawfish Producers' Compl. ¶¶ 40-42.)  They also maintain that the implementation of the Byrd Amendment by the ITC and Customs was arbitrary, capricious, and an abuse of discretion because such implementation adjudicated a right bestowed on the Crawfish Producers by Congress in 2000 based on a proceeding that took place in 1996 (when the antidumping petition on crawfish tail meat from China was filed).  (Id. at ¶¶ 31-34.)

The ITC moves under USCIT R. 12(b)(1) to dismiss Plaintiffs' claims as time-barred because these claims were not asserted within two years of the publication of the initial ADP lists in January 2001.  Similarly, Timken moves to dismiss SKF's and Koyo's claims on the grounds that these claims are time-barred because they accrued when Congress enacted the Byrd Amendment in October 2000.  The ITC also moves to dismiss Koyo's claims as premature.  Customs, the ITC, and Timken move under USCIT R. 12(b)(5) to dismiss Plaintiffs' claims insofar as Plaintiffs seek a share of past Byrd distributions on the grounds that Plaintiffs were required to file timely certifications with Customs to be eligible to receive Byrd distributions.

The Court grants in part, and denies in part, the USCIT R. 12(b)(1) motions of the ITC and Timken to dismiss Plaintiffs' claims as time-barred for the reasons discussed in Section I of the Discussion.  The Court denies the USCIT R. 12(b)(5) motions of Customs, the ITC, and Timken for the reasons discussed in Section II.

I.        USCIT R. 12(b)(1) Motions

The jurisdictional challenges present two questions: (1) when did the causes of action

accrue, and (2) is Koyo's action premature?

**A.        Accrual of Causes of Action**

Actions brought pursuant to 28 U.S.C. § 1581(i) are subject to a two-year statute of

limitations.  28 U.S.C. § 2636(i) (2000); Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d

973 (Fed. Cir. 1994); Stone Container Corp. v. United States, 229 F.3d 1345, 1348 (Fed. Cir.

2000).  "The basic rule is that the clock of a statute of limitations begins to run from the date the

plaintiff's cause of action 'accrues'; that is the term typically found in the statutes.  The clock

stops on the date the plaintiff files his complaint in a court of proper jurisdiction." Hair v. United

States, 350 F.3d 1253, 1260 (Fed. Cir. 2003) (internal citation omitted).  Thus, the Court must

decide which of Plaintiffs' claims, if any, accrued within the two-year periods ending with the

filing of the respective complaints.[9]

---

[9]The Crawfish Producers' complaint is deemed filed on February 27, 2006.  Customs
argues that the date of filing should be October 2, 2006, the date Pat Huval filed its second
supplemental and amended complaint, which added seven additional crawfish producers as
parties-plaintiff and amended the claims.  (See Customs' Mot. to Dismiss 6.)  However, USCIT
R. 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original
pleading when . . . the claim or defense asserted in the amendment arose out of the conduct,
transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Here,
the claims in the second supplemental and amended complaint arise out of the same conduct as
the original complaint—implementation of the Byrd Amendment in the context of the
antidumping duty order on crawfish tail meat from China.  Therefore, the Crawfish Producers'
amended complaint relates back to the date of the original complaint, February 27, 2006.
Accordingly, the two-year period of limitations for the Crawfish Producers covers February 27,
2004 to February 27, 2006.
        SKF filed its complaint on September 29, 2006, and Koyo on September 25, 2006.  Their
two-year periods of limitations cover September 29, 2004 to September 29, 2006, and
September 25, 2004 to September 25, 2006, respectively.

Koyo argues that statutes of limitations do not apply to "facial free speech and equal protection claims." (Pl. Koyo Corp. of U.S.A.'s Opp'n to Defs.' & Defs.-Intervenor's Mot. to Dismiss ("Koyo's Opp'n") 9.) The Ninth and Fourth Circuit Courts of Appeals have questioned in <u>dicta</u> whether statutes of limitations can bar facial constitutional challenges on First Amendment grounds. See <u>Maldonado v. Harris</u>, 370 F.3d 945, 955 n.6 (9th Cir. 2004) (expressing "serious doubt that a facial challenge under the First Amendment can ever be barred by a statute of limitations")); <u>Nat'l Advertising Co. v. City of Raleigh</u>, 947 F.2d 1158, 1168 (4th Cir. 1991) ("it is doubtful that an ordinance facially offensive to the First Amendment can be insulated from challenge by a statutory limitations period"). Nevertheless, we recognize that constitutional claims are generally subject to statutes of limitations. See, e.g., <u>Hair</u>, 350 F.3d at 1259-60 (applying six-year statute of limitations to bar the plaintiffs' takings claim); <u>Stone Container Corp.</u>, 229 F.3d at 1350 (applying two-year statute of limitations to claim for refund of an unconstitutional tax). Furthermore, we are aware of no binding precedent establishing an exception under which statutes of limitations would not apply to the claims that Plaintiffs have raised. Therefore, in deciding whether Plaintiffs' claims must be dismissed according to the two-year statute of limitations, we must determine when Plaintiffs' facial constitutional claims accrued.

Timken argues that congressional enactment of the Byrd Amendment, on October 28, 2000, started the clock on the statute of limitations period (Timken US Corp. & MPB Corp.'s Mot. to Dismiss ("Timken's Mot. to Dismiss") 11-13); the ITC argues that the trigger was Customs' publication of the initial ADP lists, on August 3, 2001 (ITC's Mot. to Dismiss 17).[10]

---

[10]In its brief, the ITC lists the date that Customs published the initial ADP lists in the
(continued...)

Accordingly, Timken and the ITC maintain that the period for Plaintiffs to have filed suit expired

on October 28, 2002, and August 3, 2003, respectively, and they move to dismiss Plaintiffs'

claims as time-barred.   Contrary to Timken's and the ITC's arguments that a single cause of

action accrued—either at the point the Byrd Amendment was enacted or the point at which the

initial ADP lists were published—Plaintiffs contend that their claims are not time-barred because

of the existence of a continuing violation.   They contend, specifically, that a new cause of action

accrued to them annually on the date of the Byrd distributions.

As a general matter "[a] cause of action accrues when 'all events' necessary to state the

claim, or fix the liability of the Government, have occurred."   Mitsubishi Elecs. Am. Inc., 44

F.3d at 977 (quoting United States v. Commodities Exp. Co., 972 F.2d 1266, 1270 (Fed. Cir.

1992); see also Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1455

(Fed. Cir. 1997).   In the specific context of facial challenges to legislative enactments on

constitutional grounds, courts have recognized that some causes of action do not necessarily

accrue only upon the date of enactment.

According to the continuing violation doctrine (sometimes referred to as the "continuing

claim doctrine") alluded to by Plaintiffs, "each time a plaintiff is injured by an act of the

defendant a cause of action accrues to him to recover damages caused by that act and . . . , as to

those damages, the statute of limitations runs from the commission of the act."   Zenith Radio

Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971).   The doctrine has been applied in

---

[10](...continued)

Federal Register as August 1, 2001.   (See ITC's Mot. to Dismiss 17.)   However, Customs
actually published the ADP lists on August 3, 2001.   2001 Notice of Intent to Distribute, 66 Fed.
Reg. at 40,782.

various contexts.  See, e.g., Papasan v. Allain, 478 U.S. 265 (1986) (abrogation of state sovereign

immunity where plaintiffs allege discrimination); Zenith, 401 U.S. 321 (antitrust); Hanover Shoe,

Inc. v. United Shoe Mach. Corp., 392 U.S. 481 (1968) (antitrust); Beebe v. United States, 640

F.2d 1283, 1293 (Ct. Cl. 1981) (government pay claim); Kuhnle Bros., Inc. v. County of Geauga,

103 F.3d 516 (6th Cir. 1997) (right to interstate travel); Palmer v. Bd. of Ed., 46 F.3d 682 (7th

Cir. 1995) (racial discrimination in school assignment plan).  For the continuing violation

doctrine to apply, "the plaintiff's claim must be inherently susceptible to being broken down into

a series of independent and distinct events or wrongs, each having its own associated damages."

Brown Park Estates, 127 F.3d at 1456.  The doctrine is not applicable to a claim that is "based

upon a single distinct event, which may have continued ill effects later."  Id.; see also Nat'l

Advertising, 947 F.2d at 1166 ("A continuing violation is occasioned by continual unlawful acts,

not continual ill effects from an original violation.") (quotation marks and citation omitted).

    We conclude that for those of Plaintiffs' claims that make facial challenges to the Byrd

Amendment on constitutional grounds, Plaintiffs in effect have alleged a series of violations that

occurred each year in which payments were made to ADPs.  The Byrd Amendment takes

antidumping duties collected under an antidumping duty order and pays them to certain domestic

producers who satisfied the support requirement.  Plaintiffs essentially challenge the

discriminatory aspect of the Byrd Amendment.  They argue that the Byrd Amendment on its face

discriminates against Plaintiffs by excluding them from the class of payees.  Further, they

contend that the Byrd Amendment continues to discriminate against Plaintiffs because the annual

payments are made to certain of Plaintiffs' domestic competitors, and not to Plaintiffs, for the life

of the antidumping duty order.

Plaintiffs argue that the reason for the discrimination is not constitutionally permissible. Distribution of the payments is conditioned on the recipient's expressed support for the underlying antidumping or countervailing duty petition.  Plaintiffs characterize the support requirement as unconstitutional viewpoint discrimination and an equal protection violation because it discriminates between similarly situated domestic producers based on whether an individual producer was a petitioner or supported the petition.  In addition, Plaintiffs allege that the Byrd Amendment continues to violate their due process rights because they continue to be ineligible to receive Byrd distributions based on speech they made prior to passage of the Byrd Amendment, while their direct competitors receive such distributions.  These claims, in facially challenging the statute on constitutional grounds, can be said to have arisen every year that the payments were made.

Plaintiffs allege a two-fold injury—injury caused by their exclusion from the class of payees, and injury caused by the payments made to their direct domestic competitors.  The arguments of the ITC and Timken focus more on the former than the latter.  The ITC and Timken argue that the injury—the alleged "compelled speech" or the events resulting in the discriminatory exclusion of Plaintiffs from the class of payees—occurred prior to enactment of the Byrd Amendment, when Plaintiffs failed to indicate support for the underlying petitions.  But that overly narrow focus largely ignores the injury to Plaintiffs from the continued payment of benefits to their direct domestic competitors, which occurred annually.  The alleged two-fold injury persisted for as long as the agencies continued to implement the allegedly-discriminatory statutory scheme.

Timken argues that the Supreme Court's decision in Ledbetter v. Goodyear Tire &

Rubber Co., Inc., 550 U.S. __, __, 127 S. Ct. 2162, 2167 (May 29, 2007), refutes Plaintiffs'

argument that enforcement of the Byrd Amendment constitutes a continuing violation.  (Mot. to

Dismiss Hr'g Tr. 126:16-130:3, Jul. 27, 2007.)  In Ledbetter, a female plaintiff alleged that poor

performance evaluations she had received earlier in her tenure with the defendant were due to

sexual discrimination and had resulted in her receiving lower pay than her male colleagues

through the end of her career.  Ledbetter, 550 U.S. at __, 127 S. Ct. at 2167.  She acknowledged

that the allegedly discriminatory pay decision had occurred outside the limitations period but

claimed a continuing violation because she received disparate payments during the statutory

period.  The Court concluded that the plaintiff's claim was time-barred because a new cause of

action did not accrue when the employer issued paychecks pursuant to a system that was facially

nondiscriminatory and neutrally applied.  Ledbetter, 550 U.S. at __, 127 S. Ct. at 2174.

The Ledbetter Court distinguished the case before it from Bazemore v. Friday, 478 U.S.

385 (1986), where the Court had held that a new cause of action accrued every time a paycheck

was issued pursuant to a facially discriminatory pay structure.  See Ledbetter, 550 U.S. at __, 127

S. Ct. at 2173  ("[W]hen an employer adopts a facially discriminatory pay structure that puts

some employees on a lower scale because of race, the employer engages in intentional

discrimination whenever it issues a check to one of these disfavored employees.").  Here, the

facts parallel those in Bazemore more closely than those in Ledbetter.  Plaintiffs allege

essentially that Congress enacted a facially discriminatory statute that conditioned the right of

domestic producers to receive Byrd distributions on impermissible grounds.  We therefore

conclude that a new cause of action accrued every time payments were made pursuant to that

statutory scheme.

Timken also points to a number of government takings cases holding that a statute of

limitations begins to run with the enactment of the statute or ordinance at issue.  (See Timken's

Mot. to Dismiss 8-10.)  However, we do not consider takings cases to be analogous to this case.

In a takings case, a single, discrete act (e.g., passage of a statute or ordinance) is alleged to reduce

the value of the property or impair the use of the property, from the time the act occurs.  Here, in

contrast, Plaintiffs allege that a distinct constitutional violation occurred each time they were

denied Byrd distributions while their competitors received them.  Although acts taken outside the

statute of limitations period (i.e., passage of the Byrd Amendment and the ITC's initial

compilation of the ADP lists) may have been independently actionable, those earlier acts do not

insulate from judicial scrutiny later developments by which the Byrd Amendment deprived

Plaintiffs of Byrd distributions while paying them to competitors.  "A series of wrongful acts . . .

creates a series of claims. . . . [T]he fact that [a defendant] has been violating the Constitution for

a generation does not permit it to commit fresh violations."  Palmer, 46 F.3d at 686; see also

Ledbetter, 127 S. Ct. at 2174 ("[A] freestanding violation may always be charged within its own

charging period regardless of its connection to other violations.").

In summary, the Court concludes that Plaintiffs' claims arising under the Constitution

that make facial challenges to the Byrd Amendment are not time-barred to the extent that they

seek relief for Byrd distributions made during the two-year periods ending with commencement

of their respective suits.  See Brown Park Estates, 127 F.3d at 1456 (quoting Friedman v. United

States, 310 F.2d 381, 384 (Ct. Cl. 1962) (limiting back pay claims to those accruing within the

statute of limitations period)).  Claims pertaining to Byrd distributions that occurred prior to

those periods are barred by the statute of limitations.  See 28 U.S.C. § 2636(i).

The Crawfish Producers, pursuant to the Administrative Procedure Act, 5 U.S.C. § 706

(2000) ("APA"), contest specific administrative actions taken by the agencies in effectuating the

Byrd Amendment.  (Crawfish Producers' Compl. ¶ 32.)  An APA cause of action accrues at the

time of the individual agency action being challenged.  Preminger v. Sec'y of Veterans Affairs,

498 F.3d 1265, 1272 (Fed. Cir. 2007).  We conclude that the claims of the Crawfish Producers

asserting APA challenges to particular actions of the ITC and Customs occurring outside the

two-year period prior to the date the Crawfish Producers filed suit, i.e., prior to February 27,

2004, are time-barred.

### B.    Koyo's Claims

The ITC argues that Koyo's claims should be dismissed as premature because, at the time

Koyo brought suit, the ITC had not taken "final agency action" on Koyo's August 11, 2006

request to be added to the relevant ADP lists, and Customs had not rejected Koyo's certification

for fiscal year 2006 distributions.  (ITC's Mot. to Dismiss 21-23.)  As a general rule, a party

filing suit under 28 U.S.C. § 1581(i) may appeal only final agency action.  See 5 U.S.C. §§ 702,

704 (2000).  However, in some instances, a party challenging the constitutionality of a statute

need not await final agency action because an agency does not have authority to address the

constitutionality of a statute it is charged with administering.  See McCarthy v. Madigan, 503

U.S. 140, 147-48 (1992) (no requirement to exhaust administrative remedies where agency

"lacks institutional competence to resolve the particular type of issue presented, such as the

constitutionality of a statute"); Thomson Consumer Elecs., Inc. v. United States, 247 F.3d 1210,

1215 (Fed. Cir. 2001).  Here, Koyo alleges that the Byrd Amendment's support requirement is

unconstitutional and that the unconstitutional provision has prevented Koyo from being included

on the relevant ADP lists and receiving Byrd distributions.  Because the ITC and Customs did

not have authority under the statute to treat Koyo as an ADP, Koyo was not obligated to wait for

confirmation of their rejection of its requests before it filed suit.  Therefore, we conclude that

Koyo's claims are not premature.


    II.    <u>USCIT R. 12(b)(5) Motions</u>

Customs, the ITC, and Timken move to dismiss Plaintiffs' claims in part, pursuant to

USCIT R. 12(b)(5).  They contend that, to the extent that Plaintiffs seek a share of past Byrd

distributions, Plaintiffs have failed to state claims upon which relief can be granted.  (Def.'s Mot.

to Dismiss ("Customs' Mot. to Dismiss") 2; ITC's Mot. to Dismiss 19-21; Timken's Mot. to

Dismiss 24.)  They argue that parties seeking Byrd distributions are required to file timely

certifications with Customs.  (Customs' Mot. to Dismiss 3; ITC's Mot. to Dismiss 19; Timken's

Mot. to Dismiss 24.)  The Crawfish Producers did not file certifications with Customs for any

Byrd distributions made within the two-year statute of limitations period (although Pat Huval

filed a timely certification for the fiscal year 2002 distribution, which was rejected by Customs

because Pat Huval was not on the ADP list).  SKF filed a certification for the 2004 distribution,

but not until September 28, 2006, two years after the deadline passed for ADPs to file

certifications for fiscal year 2004 distributions.  Koyo timely filed a certification for the fiscal

year 2006 distribution, but not for any other distributions.  Customs, the ITC, and Timken argue

that Plaintiffs are not eligible to receive a share of past Byrd distributions for which they did not

file timely certifications.

We reject the argument that the failure of Plaintiffs to file timely certifications with

Customs requires dismissal for failure to state a claim upon which relief can be granted.  Because

they were not ADPs, Plaintiffs were ineligible to file the certifications that were contemplated by

the statute and that were specifically required by Customs regulations implementing the Byrd

Amendment.  Moreover, their filing of any certification, even a qualified certification, would

have been an act of futility.

The statutory requirements of the Byrd Amendment and the regulations promulgated

thereunder apply only to ADPs.  See 19 U.S.C. § 1675c(d)(2) (Customs "shall request a

certification from each potentially eligible affected domestic producer . . ." (emphasis added));

19 C.F.R. § 159.63(a) ("In order to obtain a distribution of the offset, each affected domestic

producer must submit a certification . . . that must be received within 60 days after the date of

publication of the notice in the Federal Register." (emphasis added)).  Plaintiffs are not ADPs, as

the Byrd Amendment restricts ADP status to those who satisfied the support requirement.  Nor

are they arguing that they qualify as ADPs under the statute as written.  Cf. Cathedral Candle,

400 F.3d at 1360.  Instead, Plaintiffs argue that the support requirement of the Byrd Amendment

is unconstitutional and that they would be eligible as ADPs if the support requirement were

excised from the statute.

Customs cites Cathedral Candle for the proposition that a party must file timely

certifications with Customs to be eligible for Byrd distributions.  (Customs' Mot. to Dismiss 7,

9.)  The plaintiffs in Cathedral Candle were ADPs excluded from the ADP list for the

antidumping duty order on candles from China because their support for the underlying petition

was provided under a pledge of confidentiality.  Cathedral Candle, 400 F.3d at 1358.  The Court

of Appeals for the Federal Circuit held that the plaintiffs' failure to file timely certifications was

not excused on the grounds that the ITC did not include them on the ADP list.  Id. at 1372.

However, Cathedral Candle is inapposite to this case because Plaintiffs are not ADPs, do not

claim to be ADPs, and would not qualify for Byrd distributions even if they had timely filed

some form of "certifications" with Customs.

That Plaintiffs could not have complied with the certification requirement is clear from

the Customs regulations, which require: (1) that the submitting party certify that the party "is

eligible to receive a distribution as an affected domestic producer" and (2) that "the information

contained in the certification is true and accurate to the best of the certifier's knowledge and

belief under penalty of law."  19 C.F.R. § 159.63(a) & (b).  Plaintiffs would not have been able to

certify truthfully that they were eligible to receive distributions; they knew that they were not

eligible to receive distributions under the Byrd Amendment because they did not satisfy the

support requirement.[11]  Because it would have been impossible for Plaintiffs to satisfy the

obligation to certify truthfully their eligibility to receive distributions under the Byrd Amendment

---

[11]At oral argument, Customs acknowledged that the Crawfish Producers and SKF could not meet the Byrd Amendment's certification requirements.

> Judge Stanceu: . . . Now, could someone who is not an ADP under the statute even make a certification?
> Mr. Hughes [Customs' attorney]: They can't make a certification that they are on the list.
> Judge Stanceu: They can't even make a certification that they are an ADP because they're not.

(Mot. to Dismiss Hr'g Tr. 30:24-31:5.)

as enacted, the Court will not impose this obligation on them.  See United States v. Rylander,

460 U.S. 752, 757 (1983) (courts "will not be blind to evidence that compliance is . . .

impossible.").

　　　　Similarly, the Court rejects the argument that Plaintiffs should have submitted

certifications with a qualification or caveat.  According to this argument, such a qualification or

caveat could have stated Plaintiffs' position that the support requirement should be excised from

the statute as unconstitutional, and that if it were so excised, Plaintiffs would qualify as ADPs.

(See Mot. to Dismiss Hr'g Tr. 31:6-19.)  It would have been futile for Plaintiffs to file such

"certifications" with Customs.  The statute is clear that Plaintiffs are not eligible to receive Byrd

distributions.  See 19 U.S.C. § 1675c(a) & (b) (limiting eligibility to receive distributions to

those members of the domestic industry that were petitioners or supported the petition).  If

Plaintiffs had filed such "certifications," Customs could have done nothing except reject them.

The Court will not require Plaintiffs, who could not qualify for Byrd distributions under the

statute, to have engaged in a meaningless act before seeking relief on their claims.  Accordingly,

the Court denies the USCIT R. 12(b)(5) motions to dismiss Plaintiffs' claims in part for failure to

state a claim upon which relief can be granted.

CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the USCIT R. 12(b)(1) motions of the ITC and Timken to dismiss for lack of jurisdiction are granted in part, and denied in part; and it is further

**ORDERED** that Plaintiffs' claims bringing facial constitutional challenges to the Byrd Amendment are dismissed to the extent that they seek relief for Byrd distributions that occurred prior to the two-year periods ending with commencement of their respective suits; and it is further

**ORDERED** that Count Two of the Crawfish Producers' complaint is dismissed insofar as the Crawfish Producers challenge agency actions that occurred prior to February 27, 2004; and it is further

**ORDERED** that the USCIT R. 12(b)(5) motions of Customs, the ITC, and Timken to dismiss Plaintiffs' claims in part for failure to state a claim upon which relief can be granted denied.


\_\_/s/\_Gregory\_W.\_Carman\_\_\_
Gregory W. Carman


\_\_/s/\_Timothy\_C.\_Stanceu\_\_\_\_
Timothy C. Stanceu


\_\_/s/\_Leo\_M.\_Gordon_____
Leo M. Gordon


Dated: March 3, 2008
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of  the  court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                          Deputy Clerk